**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Thelma Bossort, | ) | No. 09-CV-8102-PCT-PGR |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Kindred Nursing Centers West, L.L.C., a | ) | |
| Delaware limited liability company, d/b/a | ) | |
| Kachina Point Health Care and | ) | |
| Rehabilitation Center, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently before the Court is the Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Compel Arbitration.[1] (Doc. 12.) Defendant contends that Plaintiff filed her Complaint subsequent to the expiration of the applicable statute of limitations and that this Court lacks jurisdiction over this matter pursuant to a "validly executed Alternative Dispute Resolution Agreement" (ADR Agreement) entered into by the parties.

Defendant Kindred Nursing Centers West, L.L.C., d/b/a Kachina Point Health Care and Rehabilitation Center ("Kachina Point") is a skilled nursing facility located in Sedona, Arizona. As such, it is a licensed health care provider under A.R.S. §12-561, et. seq.

---

[1] Plaintiff's counsel also moved to dismiss the original complaint, however such a request is unnecessary as an amended complaint supercedes the original complaint. "A first amended complaint supersedes the original complaint." Fabricius v. Maricopa County, 2006 WL 2290750, *1 (D.Ariz. 2006) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir.1992)). "After amendment, the Court will treat an original complaint as nonexistent." Id.

Plaintiff's Complaint was originally filed in State Court (Coconino County) on March 31, 2009. Defendant removed the case to Federal Court on June 15, 2009 based on diversity jurisdiction and Plaintiff's consent to Removal. Plaintiff filed an Amended Complaint on June 22, 2009 alleging medical/nursing negligence and statutory elder abuse.

Plaintiff contends that Defendant, through its agents and employees, was negligent in the management of her care and failed to provide safeguards to prevent her from getting out of bed alone and injuring herself. Only a couple of days into her stay, while heavily medicated, Plaintiff got out of bed, fell, and fractured her hip. Plaintiff's hip fracture required many months of rehabilitation and has allegedly caused continued suffering to date. Plaintiff incurred medical expenses for the cost of treatment for her injuries as well as expenses for the cost of modifying her home to make it handicap accessible for her use. Plaintiff contends that Defendant's conduct amounts to elder abuse and neglect as defined by A.R.S. § 46-455, et seq.

The matter currently before the Court involves a contract dispute pertaining to the enforceability of the ADR Agreement signed by Mr. Bossort, Plaintiff's husband at the time she entered Kachina Point. (Doc. 8.) Plaintiff contends that Mr. Bossort did not have the authority to bind her to the ADR Agreement and thus she should not be forced to submit to mediation or binding arbitration. Defendant contends that this Court lacks jurisdiction because the matter should be mediated or arbitrated pursuant to the subject ADR Agreement signed by Mr. Bossort and that Plaintiff's Complaint was filed subsequent to the expiration of the applicable statute of limitations.

I.    Relevant Factual Background

On December 21, 2006, 81 years old Thelma Bossort ("Bossort" or "Plaintiff") was admitted to Kachina Point following neck surgery.[2] Upon admittance, Plaintiff's husband

---

[2] Kachina Point was to provide Plaintiff with rehabilitation and monitoring while she recovered from said surgery. During recovery, Bossort was often medicated causing her to

- 2 -

at the time, Dallas Bossort ("Mr. Bossort"), signed the admission documents including the ADR Agreement currently at issue.

Pursuant to Plaintiff's Healthcare Power of Attorney ("POA"), her son Patrick Hammond ("Hammond") was the primary POA and Mr. Bossort was the secondary POA. Hammond was not present at Kachina Point at the time Plaintiff was admitted to Kachina Point. Mr. Bossort was presented with the admittance documents to sign. Mr. Bossort was not notified that *he did not have to sign* the ADR Agreement as a condition of Plaintiff's admittance. To the contrary, according to Deborah Hammond's deposition testimony, the Kachina Point employee who provided Mr. Bossort with the admittance paperwork advised Mr. Bossort that *she needed to have all the paperwork signed for admission*. See Doc. 18-1, p. 13. According to the Healthcare POA, only when the primary POA is unable or unwilling to make decisions for Plaintiff may the secondary make such healthcare decisions. In his affidavit, Hammond stated that at all relevant times he was willing *and able* to make any decisions regarding medical care to be administered to his mother, and did so in the course of treatment his mother received for her neck fracture. See Doc. 16-2. There is no evidence to the contrary.

II.     Legal Analysis[3]

Fed.R.Civ.P. 12(b)(6): Statute of Limitations

Where the facts alleged in a complaint indicate that the claim is barred by the relevant statute of limitations, a party may file a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Jablon v. Dean Witter Co., 614 F.2d 677, 682 (9th Cir. 1980). The complaint "fails to state a claim" when the action is time-barred. Id. "If the expiration of the applicable statute of limitations is apparent from the face of the complaint,"

_____

be heavily sedated.

[3]  The Court notes that counsel has failed to articulate a standard of review for either claim.

– 3 –

it is well settled that "the defendant may raise [that] defense in a Rule 12(b)(6) motion to dismiss." See In re Juniper Networks, Inc. Sec. Litig., 542 F.Supp.2d 1037, 1050 (N.D.Cal.2008) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980)). "If a claim is barred by [the] applicable statute of limitations, dismissal pursuant to Rule 12(b)(6) is appropriate." Guerrero-Melchor v. Arulaid, 2008 WL 539054, at *2 (W.D.Wash. Feb.22, 2008) (citation omitted). Notwithstanding, a complaint cannot be dismissed as untimely under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Pesnell v. Arsenault, 531 F.3d 993, 997 (9th Cir.2008) (internal quotation marks and citation omitted). In making this inquiry, the court must "[a]ccept[ ] as true the allegations in the complaint," and it "must determine whether the running of the statute is apparent on the face of the complaint." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir.2006) (internal quotation marks and citations omitted).[4]

In the pending case, Plaintiff's claims fall within the purview of A.R.S. §12-542. It is undisputed that such claims must be commenced within two years from the date the cause of action accrues. A.R.S. §12-542. Plaintiff's cause of action accrued on December 21, 2006, when she was subject to the alleged negligent conduct of Defendant. She concedes that she did not file her Complaint until March 31, 2009. However, in her Amended Complaint, Plaintiff specifically alleges that on December 24, 2008, Defendant expressly agreed to toll the statute of limitations for a period of six months. (Doc. 8, §IV.) Therefore, the filing of her Complaint on March 31, 2009 would have fallen within the tolled period of time. A complaint cannot be dismissed as untimely under Rule 12(b)(6) "unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* that would establish the timeliness of the claim." Pesnell v. Arsenault, 531 F.3d 993, 997 (9th Cir.2008) (internal quotation marks and

---

[4] As will be established below, this does not apply to 12(b)(1) "speaking motions."

citation omitted)(emphasis added). Here, Plaintiff has alleged a set of facts that, when accepted as true, would establish that she filed her claim within the acceptable limitations period. Therefore, Defendant's Motion to Dismiss based on the argument that Plaintiff filed her Complaint subsequent to the expiration of the applicable statute of limitations fails.

Fed.R.Civ.P. 12(b)(1): Lack of Subject Matter Jurisdiction

There are two types of Rule 12(b)(1) motions to dismiss. This order will focus on the type relevant to the matter pending in this case- commonly referred to as "factual attacks" or "speaking motions." In considering this type of motion to dismiss, courts are not limited to strictly considering the allegations of the complaint. Courts may consider extrinsic evidence. Furthermore, if the evidence is disputed, the court may weigh the evidence and determine the facts in order to satisfy itself as to its power to hear the case. "The existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). However, it is significant that when substantive issues are intertwined with jurisdictional issues the same standard does not apply. "If satisfaction of an essential element of a claim for relief is at issue....the jury is the proper trier of contested fact." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). In the event that facts are controverted or credibility issues are raised, it is the court's discretion to order an evidentiary hearing upon request of either party. "The Court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987).

Here, Kachina Point avers that there is no subject matter jurisdiction because of the existence of the ADR Agreement which compels the parties to arbitrate any and all disputes that might arise out of Plaintiff's stay at Kachina Point. The Court disagrees.

III.    The Alternative Dispute Resolution Agreement

As a preliminary issue, the Court will address Defendant's argument that the case

should be dismissed because Plaintiff previously voluntarily dismissed a lawsuit filed against Defendant in Superior Court based on the same grounds.  The notice of dismissal states that Plaintiff recognized the existence of an ADR agreement.  First, the Court notes that the dismissal was *without prejudice*.  Second, Defendant fails to provide the Court with any authority stating that such a notice of dismissal *without prejudice* prevents her, under the given circumstances, from otherwise bringing the present suit before this Court.  According to the facts, Defendant failed to produce the agreement "or announce its existence, despite earlier requests for records and negotiations extending over many months."   According to the record, in lieu of risking sanctions being threatened, Plaintiff's attorney voluntarily withdrew the lawsuit without prejudice while at the same time reserving the right to re-file after having the opportunity to review the ADR Agreement.[5]

Next, Defendant spends much of its briefing explaining to the Court that Arizona and federal public policy favor arbitration. Though this might be true in general, arbitration agreements are contracts, and when determining their enforceability, contract law is applied first and foremost.  A court will not enforce a contract unless it is  valid and binding.  Broemmer v. Abortion Servs. Of Phoenix, Ltd., 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (Az. 1992); see also First Options, 514 U.S. at 944, 115 S.Ct. at 1924 (when deciding whether to enforce an arbitration agreement, courts should apply ordinary state-law contract principles).  Thus, before considering public policy, the Court must determine whether the contract is binding on the parties.

Defendant contends that the mere signing of the ADR Agreement by Mr. Bossort "clearly established the intention to bind to arbitration any dispute which thereafter arose against the Defendant, including the dispute giving rise to the instant litigation brought

---

[5]  On a similar note, the fact that Plaintiff has followed up with the ADR claims does not bode against her in that it is in a party's best interest to comply with all applicable statutes of limitations and follow through with all possible legal remedies.  This does not reflect any concession on the part of any parties.

against this Defendant.[6]  Defendant states, "Mr. Bossort knowingly and intentionally wished to bind Plaintiff to arbitrate to resolve any dispute which thereafter arose between the Parties."  However, Defendant fails to cite any authority that although Hammond was able and willing to make decisions as primary POA, Mr. Bossort, as *secondary* POA had the power to bind Plaintiff to the ADR Agreement.

Defendant also takes the position, "[t]he parties opted to enter into an ADR agreement because they wished to work together to resolve any potential dispute in a timely fashion and in a manner which minimized their legal costs."  Defendant, however, fails to state whether it explained the ADR agreement to Mr. Bossort.  Defendant failed to advise whether Mr. Bossort knew what he was signing and whether he knew that he was giving up Plaintiff's rights to litigate any potential legal issues that may arise from her stay at Kachina point. Furthermore, Defendant fails to state whether Mr. Bossort was aware that *he did not have to sign the ADR Agreement* in order for Plaintiff to be admitted to Kachina Point.  See Ruesga infra.  Thus, to submit to the Court that the parties *opted to enter into the ADR Agreement because they wished to work together*, without any evidence to support such a statement except boilerplate language, is disingenuous at best.

Defendant maintains that Arizona courts have enforced the same ADR Agreement as the agreement in the instant manner and therefore this ADR agreement should be enforced. See Ruesga v. Kindred, et al., 215 Ariz 589 (AZ App. 2007).  Citing Ruesga, Defendant maintains that Mr. Bossort was his wife's express agent/representative, as well as her agent-in-fact, apparent agent, and ostensible agent.[7]  Therefore, the Defendant concludes that

---

[6] Defendant inappropriately cites to Exhibit 1, a 53 page deposition, failing to provide a pinpoint citation.  The Court advises that submitting a 53 page deposition for a Court to go on a fishing expedition is unacceptable under any circumstances.

[7] Under Arizona law, a spouse is not considered the agent of the other spouse by virtue of the marital relationship alone.  State Farm Mut. Auto. Ins. Co. v. Long, 492 P.2d 718, 721 (1972).

- 7 -

the subject ADR Agreement is enforceable against Plaintiff. See Ruesga, 215 Ariz. 589, 161 P.3d. 1253. Defendant contends that Mr. Bossort was his wife's agent and therefore, under the Ruesga analysis, he had the authority to sign the ADR Agreement. However, in reviewing Ruesga, this Court finds the facts considerably distinguishable from the case *sub judice*.

On November 10, 2003, Mr. Robert Ruesga was admitted to Desert Life Rehabilitation (affiliated with Kachina Point) in a severely compromised state. He had suffered a massive stroke, a heart attack, had a feeding tube, and a trache[o]stomy tube for breathing and he was virtually non-responsive. Mr. Ruesga was an in-patient resident at Desert Life until March 5, 2004. When her husband was admitted to the facility, Mrs. Ruesga was given a series of admission documents, including an ADR agreement entitled "Alternative Dispute Resolution Agreement Between Resident and Facility." Just as in the pending matter, the ADR agreement provided in bold letters that the parties agreed and understood that the contract was binding and that by signing it they were waiving their rights to a jury trial and an appeal from a decision or award of damages.[8] There is no dispute that at the time she executed the ADR agreement, Mrs. Ruesga was not acting under any power of attorney or as legal guardian for Mr. Ruesga, nor had Mr. Ruesga expressly or specifically

---

[8] Another significant difference between the case *sub judice* and Ruesga is that a social worker employed by Desert Life advised Mrs. Ruesga regarding the ADR agreement. The social worker stated that she had "presented the [ADR] agreement to [Mrs. Ruesga] on November 11, 2003." She "informed her that if she felt she had a grievance with Desert Life over the care Mr. Ruesga received, the ADR Agreement *was an option for her* and Mr. Ruesga." Ruesga, 215 Ariz. at 592. She further explained that "if [Mrs. Ruesga] did not sign it, *it would not affect whether or not Mr. Ruesga could stay at Desert Life*." Id. Mrs. Ruesga then took the ADR agreement home with her that day and returned and signed it in the social worker's presence on November 17, 2003. Mrs. Ruesga signed the agreement on a line labeled "Legal Representative." Immediately above her signature the agreement stated: "By virtue of the Resident's consent, instruction, durable power of attorney, or appointment as guardian, I hereby certify that I am authorized to act as Resident's agent in executing and delivering this Agreement." On a line below her signature, labeled "Authority and Title," the word "wife" was hand written. In the case at bar, Mr. Bossort was directed by a Kachina Point employee that she needed him to fill out all the paperwork. See supra.

- 8 -

authorized her to do so. The trial court initially denied Desert Life's motions to dismiss and to compel arbitration, finding "[t]he arbitration agreement [wa]s not a valid contract because it [had not been] signed by Mr. Ruesga or his authorized agent." Desert Life later moved for Rule 60(b) relief from that ruling, arguing that newly discovered medical records were "cogent evidence that [Florentine] did, in fact, have the authority to bind her husband to the terms of the ADR Agreement when she signed it on his behalf, thereby giving rise to a valid and enforceable agreement to arbitrate his claims."

The newly discovered evidence in Ruesga, as well as the fact that Mr. Bossort, the secondary POA, signed the subject ADR Agreement despite the primary POA asserting that he was able to do so, are what clearly distinguish the two cases. Moreover, unlike in Ruesga, the record indicates that there was no one assisting Mr. Bossort during the signing of the papers. As stated, he was told by a Kachina employee that he needed to fill out all the paperwork for admittance. Thus, it can be inferred that he was unaware that if he did not sign the documents upon site, his wife could not be admitted. The Court finds that except to the extent that the cases pertain to the enforceability of the same ADR Agreement, the pending case and the Ruesga case are clearly distinguishable.

Agency

With regard to the agency relationship recognized in Ruesga, Desert Life cited a long history and variety of medical records in order to prove to the Court that such an agency relationship existed. Desert Life introduced a 1989 "Conditions of Admission" form signed by both Mr. Ruesga, who had signed as the "Patient," and Mrs. Ruesga, who had signed as his "Agent or Legally Authorized Representative." Desert Life also produced a June 2003 document in which Mr. Ruesga had authorized his insurance company to disclose his protected health information to his wife. In executing that document, Mr. Ruesga further authorized his wife "to act upon and/or make changes to [his] member information," allowing her to make, *inter alia*, a "primary care physician change," or a "change in network." That

document also stated that the authorization was "valid from always to all the time." Desert Life's proffered medical records from 2003 established that Mrs. Ruesga had controlled Mr. Ruesga's care even when he was conscious and able to "follow some simple commands." Moreover, several medical consent forms from July and August 2003 named Mr. Ruesga as the patient, but were signed by Mrs. Ruesga as his "legally authorized representative." Based on the newly discovered evidence, the trial court granted Desert Life's motion under Rule 60(c), finding that Mr. Ruesga had "created an *actual or apparent agency relationship* that empowered his wife to act on his behalf." Therefore, the Court found that she "had the authority to bind him to the arbitration provisions." The Court explained, "Desert Life produced several medical records that revealed a history of Mrs. Ruesga acting and making decisions on Mr. Ruesga's behalf. The Court reasoned that the records Desert Life produced reflect that *he intended his wife to act as his agent*.[9]

In the pending matter, there is no evidence in the record indicating a history of Mr. Bossort acting as an agent for Plaintiff.[10] Furthermore, there is no evidence to establish that Plaintiff intended that her husband act as her agent. Plaintiff intentionally signed a Healthcare POA wherein she appointed her son Patrick as primary POA, indicating her intent that *he* act as her agent regarding healthcare decisions whenever possible. The Healthcare Power of Attorney explicitly states that only in the event that Patrick is unwilling or unable to serve or continue to serve as Plaintiff's agent, may Mr. Bossort serve as Plaintiff's agent. See Doc. 12-1. In his affidavit, Patrick states that at all relevant times he was willing and able to make any decisions regarding medical care to be administered to his mother, and did

---

[9] The Court finds that under the Ruesga case, Mr. Bossort was not Mrs. Bossort's actual or apparent agent.

[10] Kachina's assertion that Mr. Bossort's signing of the admission documents amounts to a history of acting as Plaintiff's agent is not akin to the agency relationship recognized by the Court in Ruesga. A one time signing of a stack of admittance papers is not the equivalent of a long history of acting as the agent of one's spouse.

so in the course of treatment his mother received for a neck fracture. He further states that at no time was he asked to execute any documents regarding a decision to waive a right to a jury trial or binding his mother to arbitration, nor did he believe he had the authority to do so. See Doc. 16-2. The mere fact that he was not present at the scene does not *establish* that he was not able to make healthcare decisions as primary POA for his mother.

The uncontroverted evidence regarding the authorization to bind Plaintiff to the ADR Agreement states that Patrick Hammond, primary POA, *was* available and able to make decisions at the time Plaintiff was admitted to Kachina Point.[11] Where one of the parties who signed the contract did not have authority to do so, the contract is not enforceable. No other agency relationship between Plaintiff and Mr. Bossort was established. Therefore, according to the evidence before the Court, Mr. Bossort could not, as a matter of law, bind Plaintiff to the ADR Agreement. Accordingly,

IT IS HEREBY ORDERED that the Motion to Dismiss and Compel Arbitration is DENIED.

DATED this 10th day of November, 2009.

Paul G. Rosenblatt
United States District Judge

---

[11] The fact that there was a 30 day period of revocation is irrelevant when the contract (ADR Agreement) was not valid at the time it was created.

- 11 -